## LEONARD BLASSINGAME v. STATE.

No. A-5751.  Opinion Filed Oct. 26, 1926.
(250 Pac. 144.)

Rummons & Hughes, for plaintiff in error.

The Attorney General, for the State.

DOYLE, J. The plaintiff in error was convicted, and, in accordance with the verdict of the jury, he was sentenced to pay a fine of $250 and be confined in the county jail for 30 days, on a charge of the unlawful possession of intoxicating liquor.

Of the various errors assigned, it is only necessary to consider the one that the verdict is not sustained by sufficient evidence.

The conviction is based on the testimony of two deputy sheriffs, who, in executing a search warrant, found some jars of whisky in a ditch near the road upon the place which the defendant had occupied as a tenant.

Sam Standerfer testified:

"Mr. Blassingame was not at home. Mrs. Blassingame and three or four small children were there, and we searched around considerably. We went to the barn and a rock fence there. Mr. Lewis went north and I went east, and we noticed a little girl running up the road from just south of the house, in a fast run, bareheaded. I saw a wagon coming around the corner of the place and thought it was Mr. Blassingame and she was meeting him. I searched around there for a while and looked to see whether she stopped the wagon or not, but when this wagon got to the house it kept on going on to the west. I just turned and went out toward the east and there was quite a ditch grown up in high grass; when I got there, this little girl had gone back to the southeast corner of the land, going back towards the house; I walked on and found four half-gallons of whisky in a gunny sack in this ditch, three half-gallons broken all to pieces and poured out on the ground, and a little toy pistol broken in four or five pieces laying on the top of the sack."

R. W. Lewis testified:

"A. Well we just went down there that evening and searched around the place; did not find anything right around the place, went north to the barn; searched around the north fence, and found some glass jars which made us a little more anxious; and Sam went east and I went north about that time; just before we separated this little girl went through the orchard, and Sam said, 'I will go east around the mountain and see

what they were doing over there,' and I went on north and searched around a straw stack, and he told me to come back that he had found some stuff."

As a witness in his own behalf, the defendant testified:

"I had been there four years; my family consists of three boys and two girls; the oldest girl is three years old, the oldest boy is eight years old; I only had my household goods and my horses there at that time. The owner had asked me to let him move his stuff there, and he had about half a ton of cotton seed, and he and his son had been on the place; there is a drainage ditch cut to carry the water off the mountain around the foot of the mountain; the ditch runs about parallel with the fence; they say they found the whisky about 30 steps from the section line in the drainage ditch that is about 250 yards from the house; on that day I was hauling oats over to the place I live and had taken the second load when I heard the officers had been there; I went to Mt. Park and the officers arrested me, I did not put that liquor there, I did not know it was there, and I had no interest in that liquor."

In its facts, this case is similar to that of Youngblood v. State, 32 Okla. Cr. 106, 240 P. 140. The only circumstance in this case pointing to the guilt of the defendant was the fact that the liquor was found on the farm occupied by him. The court failed to instruct the jury on the law of circumstantial evidence and refused to instruct the jury that:

"The mere finding of whisky upon the farm occupied by the defendant will not warrant the conviction, unless you find beyond a reasonable doubt that the defendant had knowledge that such whisky was upon the farm, and, unless you should so find, your verdict should be not guilty."

In our opinion, it would be destroying the presumption which arises in favor of the innocence of the accused and permitting the subversion of the rule which

238

requires establishment of a guilt beyond a reasonable doubt to allow this conviction to stand.

The judgment is accordingly reversed.

BESSEY, P. J., and EDWARDS, J., concur.